# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                     )

**Shanell James,**                 )
                                     )

      **Plaintiff,**            )
                                     ) **Civil Action No. 06-0562 (RMC)**

                                     )

      **v.**                       )
                                     )

**U.S. Customs and Border Protection,**   )
                                     )

      **Defendant.**           )
_____)

## DEFENDANT U.S. CUSTOMS AND BORDER PROTECTION'S
## MOTION FOR SUMMARY JUDGMENT

Defendant, U.S. Customs and Border Protection ("CBP"), pursuant to Fed. R. Civ. P. 56, moves for summary judgment because there are no material facts in dispute in this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended, and defendant is entitled to judgment as a matter of law. In support of this motion, defendant respectfully refers the Court to the attached Memorandum of Points and Authorities. Also attached is defendant's statement of material facts as to which there are no genuine issue.

Plaintiff should take notice that any factual assertions contained in the accompanying affidavit and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in defendant's attachments. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), Local Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent

to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully Submitted,

/s/

_____

KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/

_____

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/

_____

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| Shanell James, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 06-0562 (RMC) |
| | ) |
| v. | ) |
| | ) |
| U.S. Customs and Border Protection, | ) |
| | ) |
| Defendant. | ) |

**STATEMENT OF MATERIAL FACTS AS TO WHICH**
**THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7(h), the defendant hereby submits the following material facts as to which there is no genuine dispute:

1. On March 14, 2005, the US Customs and Border Protection (CBP) Disclosure Law Branch acknowledged the receipt of Plaintiff's Freedom Of Information Act (FOIA) request and forwarded it to the CBP's FOIA/Customer Satisfaction Unit. Declaration of Dorothy Pullo, ¶ 2 and Exhibit A.

2. On March 24, 2005, the FOIA/Customer Satisfaction Unit sent plaintiff a letter, acknowledging receipt of his FOIA request and asking plaintiff to complete the enclosed Request for records form. CBP has no record that plaintiff ever returned the Request for Records form and no further action was taken. Declaration of Dorothy Pullo, ¶ 2 and Exhibit B.

3. On or about June 23, 2006, in response to Plaintiff's complaint, a search was conducted by the FOIA/Customer Satisfaction Unit and two responsive records were found. Declaration of Dorothy Pullo, ¶ 2.

4.   On June 30, 2006, CBP sent a letter to plaintiff informing him of the results of the search for responsive records in CBP's database.  The search produced two responsive records, which were enclosed with the letter.  However, plaintiff did not receive CBP's June 30, 2006, letter due to his transfer to a new prison facility and the letter was returned by the U.S. Postal Service.  The return envelope indicated that forwarding to plaintiff's new address had expired.  Declaration of Dorothy Pullo, ¶ 2 and Exhibit C.

5.   On September 6, 2006, CBP again sent the letter and responsive records to plaintiff at his new address.  Exhibit D.

6.   CBP applied FOIA Exemptions (b)(2), (b)(6) and (b)(7)(C) to the two responsive documents.  Id.

Respectfully submitted,

/s/
_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/
_____
RUDOLPH  CONTRERAS, D.C. Bar #  434122
Assistant United States Attorney

/s/
_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **Shanell James,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 06-0562 (RMC)** |
| | ) |
| **v.** | ) |
| | ) |
| **U.S. Customs and Border Protection,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and pertains to the processing of Plaintiff's FOIA request regarding case records by U.S. Customs and Border Protection (CBP), formerly known as the U.S. Customs Service.[1]  The attached declaration of Dorothy Pullo, Supervisory Program Analyst, Treasury Enforcement Communications System (TECS) and FOIA/Customer Satisfaction Unit, Office of Field Operations at CBP, describes the response to plaintiff's FOIA request.

### Factual and Procedural Background

The factual and procedural background is fully contained in the statement of material facts to which there is no genuine issue, attached and fully incorporated herein.

---

[1]  Customs and Border Protection is a subcomponent of the Department of Homeland Security.

**ARGUMENT**

I.    **Defendants Are Entitled to Summary Judgment**

    A.    **Standard for Summary Judgment**

        In a FOIA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(c); Weisberg v. Department of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). The Court exercises de novo review over FOIA matters, and the burden is on the agency to justify all non-disclosures. 5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 755 (1989).  In carrying its burden, agencies may rely on declarations of government officials, to which courts normally accord a presumption of expertise in FOIA as long as the declarations are sufficiently clear and detailed and submitted in good faith.  Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see Hayden v. National Security Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Once the Court determines that the declarations are sufficient, it need not inquire further.  Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (In FOIA cases, an agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements'.") (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)); see also, Burnes v. CIA, No. 05-242 , U.S. Dist LEXIS 20114 at *2-7 (D.D.C. Sept. 14, 2005) (a copy of the opinion is attached hereto).  A court "may award summary judgment [in a FOIA case] solely on the basis of information provided by the department or agency affidavits or declarations." Burns

2

v. CIA, 2005 U.S. Dist LEXIS 20114; <u>see also</u>, <u>Hayden</u>, 608 F.2d at 1386-87.

Summary judgment may be granted solely on the basis of agency affidavits [or declarations] if they "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish that the documents are within the FOIA exemption category; the district court need look no further." <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d at 1329; <u>Bowen v. FDA</u>, 925 F.2d 1224, 1227 (9th Cir. 1991). <u>See also</u> <u>Hayden</u>, <u>supra</u>, at 1387; <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981). These declarations or affidavits (singly or collectively) are often referred to as a <u>Vaughn</u> index, after the case of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977, 94 S.Ct. 1564 (1974). There is no set formula for a <u>Vaughn</u> index. It is the content, not the form which is important. "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." <u>Delaney, Midgail & Young, Chartered v. IRS</u>, 826 F.2d 124, 128 (D.C. Cir. 1987). <u>See also</u> <u>Keys v. United States Department of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987); <u>Hinton v. Department of Justice</u>, 844 F.2d 126, 129 (3d Cir. 1988).[2]

Regarding the adequacy of the search, to satisfy the requirements for summary judgment, all the agency need do is produce "an affidavit reciting facts which enable the District Court to satisfy itself that all appropriate files have been searched." <u>Church of Scientology v. IRS,</u> 792

---

[2]    "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." <u>Id</u>. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." <u>Information Acquisition Corp. v. Dept. of Justice</u>, 444 F.Supp. 458, 462 (D.D.C. 1978).

F.2d 146, 151 (D.C. Cir. 1986). "[I]n the absence of countervailing evidence or apparent

inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the

search conducted by the agency will suffice to demonstrate compliance with the obligations

imposed by FOIA." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).

Here, summary judgment should be entered in favor of the CBP because it has submitted

a declaration showing both that a reasonable and adequate search was conducted and that any

information that fell within the class of documents plaintiff requested was either produced or

exempt from disclosure under FOIA Exemptions (b)(2), (b)(6) and (b)(7)(C). The declaration

contains reasonable specificity of detail regarding the search and the reasons for withholding, in

part, the information not produced to plaintiff. Finally, CBP's judgment regarding the

production or exempting of information objectively survives the test of reasonableness, good

faith, specificity, and plausibility.

### B.     CBP's Search Was Entirely Adequate

In FOIA cases, "the Court's inquiry regarding the adequacy of the search focuses on the

search itself, not its results." See Burnes v. CIA, No. 05-242, U.S. Dist LEXIS 20114 at *2-7

(D.D.C. Sept. 14, 2005) (attached), citing Weisberg v. United States Dep't of Justice, 240 U.S.

App. D.C. 339, 745 F.2d 121, 126 (D.C. Cir. 1982). To fulfill an agency's obligations under

FOIA, the agency must demonstrate that it has conducted a "search reasonably calculated to

uncover all relevant documents." Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir.

1994). But the search need only be reasonable; it does not have to be exhaustive. Miller v.

United States Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985). In other words, "[t]he question

is not 'whether there might exist any other documents, but rather whether the *search* for those

4

documents was adequate.'" <u>Steinberg v. U.S. Dept. of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994)

(emphasis in original).  Merely because an agency is unable to find a particular document a

requestor believes that it should have, does not render its search inadequate.  <u>Wilbur v. CIA,</u> 355

F.3d 675, 678, (D.C. Cir. 2004); <u>Nation Magazine v. United States Customs Serv</u>., 315 U.S.

App. D.C. 177, 71 F.3d 885, 892 n. 7 (D.C. Cir. 1987).

Here, as explained by Dorothy Pullo, CBP conducted a reasonable, diligent, and adequate

search.  The TECS/FOIA Customer Satisfaction Unit executed an independent search in the

relevant enforcement system (i.e., the Treasury Enforcement Communications System (TECS))

for all records responsive to the plaintiff's FOIA request.  TECS is the sole interface to CBP

records of encounters with CBP officers at the border.  Declaration of Dorothy Pullo, ¶ 3.

Therefore, a search of TECS would be reasonably calculated to unearth CBP records relating to

plaintiff.  <u>Id.</u>  CBP's search revealed two records, which were responsive to plaintiff's FOIA

request.  <u>Id.</u>  CBP has applied FOIA Exemptions (b)(2), (b)(6) and (b)(7)(C) to the released

documents.  <u>Id.</u>

### C.    CBP IS JUSTIFIED IN ITS INVOCATION OF EXEMPTION (b)(2) Internal Agency Rules and Practices.

### Legal Standard for Exemption 2

Title 5, United States Code, Section 552 (b)(2) (hereinafter Exemption 2) exempts from

mandatory disclosure records "related solely to the internal personnel rules and practices of an

agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1)

internal agency matters so routine or trivial that they could not be "subject to ... a genuine and

significant public interest;" and (2) internal agency matters of some public interest "where

disclosure may risk circumvention" of statutes or agency regulations.  <u>Department of Air Force v. Rose</u>, 425 U.S. 352, 369-70 (1976); <u>National Treasury Employees Union v. United States Custom Service</u>, 802 F.2d 525, 528-30 (D.C. Cir. 1986); <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981).   See also <u>Gordon v. FBI</u>, 388 F.Supp.2d 1028 (N.D. Cal. 2005) ("high 2"; protecting "no fly lists"; "[r]equiring the government to reveal whether a particular person is on the watch lists would enable criminal organizations to circumvent the purpose of the watch list by determining in advance which of the members may be questioned."); <u>Odle v. Dep't of Justice</u>, No. 05-2771, 2006 WL 1344813 (N.D. Cal. May 17, 2006) ("low 2"; protecting telephone numbers, fax numbers, case file numbers, location codes, allegation codes, and computer path names, because they are routine matters of "merely internal interest.").  This Exemption protects routine internal administrative matters and functions of CBP which have no effect on the public at large.  It also protects against the risk of disclosure that would benefit those attempting to violate the law and avoid detection or circumvent a legal requirement.

### Application of Exemption 2

The invocation of Exemption (2) in this instance was made to protect telephone, facsimile numbers , administrative markings (e.g., file numbers, log numbers, record identification numbers, etc.) relating to internal agency file control systems, administrative codes and computer codes (e.g., access codes, function codes, windows-based access screens or "drop-down" lists, etc.) of internal agency information systems.  These markings are purely internal and are utilized by CBP to assist in the management and control of its mission.  Declaration of Dorothy Pullo, ¶ 5 and Exhibits E and F.  As access to the filing and computer systems is restricted from the public,

6

the public has little or no interest in this information or the file markings and computer codes. In addition, knowledge of internal agency computer system codes could facilitate improper access to sensitive CBP records and interfere with CBP's ability to maintain control of its information systems. Id.

Exemption 2 was also asserted to withhold such things as the administrative procedures related to the handling of inadmissible aliens (e.g., incident numbers, investigatory record numbers, etc.), the names of units that are activated in response to certain types of incidents, the consultation process within CBP (e.g., internal notification procedures, internal consultation procedures, etc.), the notification or consultation process with other law enforcement agencies, and the procedures related to how information was handled in an operational context by CBP officers. Disclosure of this information to the public would reveal procedures, guidelines, and techniques utilized by the agency in its enforcement operations, thereby benefitting those attempting to violate the law and avoid detection. Public awareness of specific operational information would aid those who seek to circumvent CBP operations and thus harm the agency's effective conduct of its mission. Id. ¶ 6.

**D.    CBP IS JUSTIFIED IN ITS INVOCATION OF EXEMPTION (b)(6) and (b)7(C)**

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Personnel Management, 76

7

F.3d 1240, 1243 (D.C. Cir. 1996), <u>cert</u>. <u>denied</u>, 519 U.S. 1123 (1997), citing <u>Pratt v. Webster</u>,

673 F.2d 408, 420 n.32 (D.C. Cir. 1982).  When, however, a criminal law enforcement agency

invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  <u>Keys</u>

<u>v. U.S. Dept. of Justice</u>, 830 F.2d 337, 340 (D.C. Cir. 1987), citing <u>Pratt</u>, 673 F.2d at 418.  A

criminal law enforcement agency must simply show that "the nexus between the agency's activity

. . . and its law enforcement duties" is "based on information sufficient to support at least 'a

colorable claim' of its rationality."  <u>Keys</u>, 830 F.2d at 340, quoting <u>Pratt</u>, 673 F.2d at 421.

   Once the agency has demonstrated that the records were compiled for law enforcement

purposes, the Court must next consider whether the release of information withheld "could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  This

determination necessitates a balancing of the individual's right to privacy against the public's

right of access to information in government files.  <u>See</u>, <u>e.g.</u>, <u>U.S. Dept. of Justice v. Reporters</u>

<u>Committee for Freedom of the Press</u>, 489 U.S. 749, 776-780 (1989).

   The Supreme Court has made clear that "whether disclosure of a private document under

Exemption 7(C) is warranted must turn on the nature of the requested document and its

relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the

light of public scrutiny,' <u>Department of Air Force v. Rose</u>, [425 U.S. 352, 372 (1976)], rather

than on the particular purpose for which the document is being requested."  <u>Reporter's</u>

<u>Committee</u>, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not

directly reveal the operations or activities of the government "falls outside the ambit of the public

interest that the FOIA was enacted to serve."  <u>Id</u>. at 775.  That public interest is to "shed[] light

on an agency's performance of its statutory duties."  <u>Id</u>. at 772.  The Plaintiff bears the burden of

establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." Perrone v. FBI, 908 F. Supp. 24, 26 (D.D.C. 1995), citing Senate of Puerto Rico v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant" that matters. Brown v. FBI, 658 F.2d 71, 75 (2d Cir.1981). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to." Davis v. Department of Justice, 968 F.2d 1276, 1282 (D.C. Cir.1992) (quoting Reporters Committee, 489 U.S. at 773) (internal quotation marks omitted).

The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir.1991). Our court of appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects, witnesses or investigators who are identified in agency records in connection with law enforcement investigations. Reporters Committee, 489 U.S. at 780; Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity'" (quoting Dunkelberger v. Dept. of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990)). Indeed, an agency may categorically assert Exemption 7(C) to

protect the identities of witnesses or other persons mentioned in law enforcement files in such a

way as to associate them with criminal activity.  Reporters Committee, 489 U.S. at 780; Nation

Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard

Services, 926 F.2d at 1206.

Exemption 6 of the FOIA provides for the withholding of matters contained in "personnel

and medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In a definitive opinion on the meaning of

the term "similar files," the Supreme Court held that Exemption 6 "'[was] intended to cover

detailed government records on an individual which can be identified as applying to that

individual.'"  Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (quoting

H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin.

News 2428); New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990 (en banc).

In Department of State v. Washington Post Co., the Supreme Court held:

'[T]he protection of an individual's right of privacy' which Congress sought to achieve by
preventing 'the disclosure of [information] which might harm the individual,' H.R. Rep.
No. 1497, supra, at 11, surely was not intended to turn upon the label of the file which
contains the damaging information.

Id., 456 U.S. at 601.  Thus, even information which is not specifically located in "personnel files"

comes within the penumbra of Exemption 6.  Indeed, the Supreme Court clarified that all

information that "applies to a particular individual" meets the threshold requirement for

Exemption 6.  Id. at 599-603, 601.  This broad construction of "similar files" was necessary in

view of Congress' primary purpose in enacting Exemption 6, which was "to protect individuals

from the injury and embarrassment that can result from the unnecessary disclosure of personal

information."  Washington Post Co., 456 U.S. at 599.

In this case, CBP withheld, under Exemption 6 and in conjunction with Exemption 7(C), the names and other personal identifying information of CBP officers and third parties who were mentioned in the two documents released.  See Exhibits E and F.  As the information in question can "be identified as applying to [a particular] individual,"  Washington Post Co., 456 U.S. at 602, the information is contained in files which clearly satisfy the threshold requirement of Exemption 6 as defined by the Supreme Court.

Having established that the withheld information meets the threshold requirement of Exemption 6, a determination must then be made as to whether disclosure would constitute a "clearly unwarranted invasion of personal privacy."[3]  This requires a balancing of the public interest in disclosure against the individual privacy interest which would be invaded by release of the information.  See, e.g., NARA v. Favish, 124 S. Ct. 1570, 1580 (2004); Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989) [Reporters Committee]; Department of the Air Force v. Rose, 425 U.S. 352, 372 (1976).

Here there can be no question that viable privacy interests are at stake.  The identities of law enforcement personnel and third parties are referenced in these two documents, which are compiled for law enforcement purposes.  Declaration of Dorothy Pullo, ¶ 7.  Law enforcement personnel have an interest in being protected from harassment and annoyance in their private lives due to the conduct of their official duties, which could result from public disclosure of their

---

[3] As indicated above, Exemption 7(C) provides broader protection than Exemption 6 because Exemption 7(C) permits information to be withheld whenever disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Thus, records compiled for law enforcement purposes that satisfy Exemption 6 may be withheld under Exemption 7(C) a fortiori.

11

identity.  Id.  This is also true with respect to the third parties named, who have a privacy interest

in being protected from comment, speculation and stigmatizing connotation associated with

being identified in a law enforcement record.  Id.

There is no public interest in the release of this privacy-protected information because

dissemination of the information would not help explain the activities and operations of CBP.  No

public interest would counterbalance the law enforcement and third party individuals' privacy

rights in the information withheld under either of these exemptions.  Declaration of Dorothy

Pullo ¶ 7 and 8.

### E.    SEGREGABILITY

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue sua

sponte."  Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022,

1028 (D.C. Cir. 1999).  The FOIA requires that if a record contains information that is exempt

from disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt

portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566

F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements".  Mead Data,

566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed.  Id.  All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

<u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." <u>Mead Data</u>, 566 F.2d at 261, n.55.

     In this case, CBP has demonstrated with reasonable specificity that all reasonably

segregable information has been released.  See Exhibits E and F.  The declaration of Dorothy

Pullo describes the non-segregable information and the reasons why in some instances partial

releases were made.  <u>See</u>  Pullo Decl.  ¶¶ 5-8.   CBP has plainly met its burden here.

## **CONCLUSION**

     For the foregoing reasons, defendant U.S. Customs and Border Protection respectfully

request that its motion for summary judgment be granted.

          Respectfully submitted,

            /s/

          _____

          KENNETH L. WAINSTEIN, D.C. BAR # 451058
          United States Attorney

            /s/

          _____

          RUDOLPH  CONTRERAS, D.C. Bar #  434122
          Assistant United States Attorney

            /s/

          _____

          HEATHER D. GRAHAM-OLIVER
          Assistant United States Attorney
          Judiciary Center Building
          555 4th St., N.W.
          Washington, D.C.  20530
           (202) 305-1334

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Motion for Summary Judgment was served upon Plaintiff by

depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:


SHANELL JAMES
PRO SE
R69829-004
FORT DIX F.C. I.
P.O. Box 7000
Westside Compound
Fort Dix, NJ 08640


on this 8th day of September  2006.



/s/
_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney