IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

Shanell James,           )
                         )
        Plaintiff,       )
                         )
        v.               )   Civil No. 1:06CV00562
                         )
U.S. Customs & Border Protection )
                         )
        Defendant.       )

DECLARATION OF DOROTHY PULLO

I, DOROTHY PULLO, pursuant to 28 U.S.C. § 1746, declare as follows:

1.   I am the Supervisory Program Analyst, Treasury Enforcement Communications System (TECS) and Freedom of Information Act (FOIA) Customer Satisfaction Unit, Office of Field Operations, United States Customs and Border Protection (CBP), formerly known as the U.S. Customs Service. As such, I am the official responsible for the overall supervision and management of the processing of FOIA requests for information in CBP record systems, including CBP's database of information on the inspection of individuals at the border recorded in the Treasury Enforcement Communications System (TECS). All information contained herein is based upon information furnished to me in my official capacity and my review of the records systems kept in the ordinary course of business by CBP.

2. I am familiar with the factual allegations contained in Plaintiff's complaint filed on or about March 24, 2006, wherein he maintains that he requested information, pursuant to FOIA, 5 U.S.C. § 552, on February 22, 2005 from CBP. On March 14, 2005, CBP's Disclosure Law Branch acknowledged the receipt of Plaintiff's FOIA request and forwarded it to the FOIA/Customer Satisfaction Unit. The FOIA/Customer Satisfaction Unit sent Plaintiff a letter dated March 24, 2005, requesting Plaintiff to complete an enclosed Request for Records form. However, CBP has no record that Plaintiff ever returned the Request for Records. No further action was taken.

On or about June 23, 2006, in response to Plaintiff's complaint, I, along with members of my staff from the TECS/FOIA Customer Satisfaction Unit, reviewed the Office of Field Operations case tracking system for a TECS/FOIA request filed by Plaintiff as part of the CBP response to the above-captioned complaint. When a FOIA request is received by CBP, my staff logs the request into the Office of Field Operations case tracking system, along with relevant information, which includes the identity of the requester. The case tracking system maintained by my office is the sole automated means by which CBP would locate FOIA requests referred to CBP by members of the public or other government agencies. Using this system I, along with members of my staff, located the record of Plaintiff's initial

FOIA request. I also located two additional letters from Plaintiff dated May 25, 2005 and August 20, 2005.

On June 30, 2006, I sent a letter to Plaintiff informing him of the results of a search for requested records in CBP's database. The search of the database had produced two records, which I enclosed with the letter. These records are attached as exhibits to this declaration. I also advised Plaintiff in the letter of his right to appeal CBP's assertion of FOIA exemptions within the two records to CBP's Office of Regulations and Rulings. However, Plaintiff did not receive the June 30, 2006 letter. The U.S. Postal Service returned the letter to CBP. The return envelope indicated that forwarding to Plaintiff's new address had expired.

## ADEQUACY OF SEARCH

3. In response to Plaintiff's allegations, myself and other members of the TECS/FOIA Customer Satisfaction Unit executed an independent and thorough search in the relevant enforcement system (i.e., TECS) for all records responsive to the Plaintiff's FOIA request. TECS is the sole interface to CBP records of CBP officers with persons encountered at the border. Therefore, a search of TECS would be reasonably calculated to unearth CBP records relating to Plaintiff. CBP's search revealed two records concerning the FOIA request submitted by Plaintiff to CBP. The

following FOIA exemptions apply to these records: 5 U.S.C. §§ 552(b)(2), (b)(6), and (b)(7)(C).

## EXEMPTIONS

4. Section 552(b)(2) of Title 5 of the U.S. Code exempts from mandatory disclosure matters that are "related solely to the internal personnel rules and practices of an agency." Exemption (b)(2) encompasses two distinct categories of information: (a) internal matters of a relatively trivial nature, sometimes referred to as "low 2" information, and (b) more substantial internal matters the disclosure of which would risk circumvention of a legal requirement, sometimes referred to as "high 2" information. With respect to "high 2" information, the intent of exemption (b)(2) is that disclosure should not benefit those attempting to violate the law and avoid detection. The use of Exemption (b)(2) in this case involves both "low 2" and "high 2" information.

5. The "low 2" information withheld pursuant to Exemption (b)(2) consists of phone numbers, facsimile numbers, administrative markings (e.g., file numbers, log numbers, record identification numbers, etc.) relating to internal agency file control systems, administrative codes and computer codes (e.g., access codes, function codes, windows-based access screens or "drop-down" lists, etc.) of internal agency information systems.

4

These markings are purely internal and are utilized by CBP to assist in the management and control of its mission. As access to the filing and computer systems is restricted from the public, the public has little or no interest in this information or the file markings and computer codes. In addition, knowledge of internal agency computer system codes could facilitate improper access to sensitive CBP records and interfere with CBP's ability to maintain control of its information systems.

6. The "high 2" information withheld pursuant to Exemption (b)(2) is predominantly internal and does not impact, in any substantive manner, upon Plaintiff. This "high 2" information consists of such things as the administrative procedures related to the handling of inadmissible aliens (e.g., incident numbers, investigatory record numbers, etc.), the names of units that are activated in response to certain types of incidents, the consultation process within CBP (e.g., internal notification procedures, internal consultation procedures, etc.), the notification or consultation process with other law enforcement agencies, and the procedures related to how information was handled in an operational context by CBP officers. Disclosure of this information to the public would reveal procedures, guidelines, and techniques utilized by the agency in its enforcement operations, thereby benefiting those attempting to

violate the law and avoid detection. Public awareness of specific operational information would aid those who seek to circumvent CBP operations and thus harm the agency's effective conduct of its mission.

7.  Section 552(b)(6) and (7)(C) of Title 5 of the U.S. Code exempts from mandatory disclosure records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. These exemptions protect, among other information, the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes. The exemption is intended to protect law enforcement personnel from harassment and annoyance in their private lives due to the conduct of their official duties, which could conceivably result from public disclosure of their identity. The exemptions are also intended to protect third parties, whose identities are revealed in law enforcement files, from comment, speculation and stigmatizing connotation associated with being identified in a law enforcement record.

8.  In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of any individual's privacy interest. In withholding the information,

6

the individual's privacy interest is balanced against the public's interest in disclosure. In each instance, it was determined that whatever public interest there might be, if any, in knowing the names of the individuals identified in the relevant records, did not outweigh the privacy interests of said individuals. In this case, Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personal identifying information of CBP officers and third parties who were mentioned in the documents.

CERTIFICATION

The matters set forth in this Declaration were at times relevant to response to this complaint within my official duties and set forth in my official capacity, to the best of my information, knowledge and belief. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of September, 2006.

*Dorothy Pullo* (signature)

Dorothy Pullo
Supervisory Program Analyst
TECS/FOIA Customer Satisfaction Unit
Office of Field Operations
United States Customs and Border Protection
Washington, D.C.