UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHANELL JAMES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06-562 (RMC) |
| U.S. CUSTOMS & BORDER PROTECTION, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION & ORDER**

Shanell James, proceeding *pro se*, filed this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, appealing the disposition of his records request by the United States Customs and Border Protection (CBP), a component department of the United States Department of Homeland Security (DHS).  Defendant has filed a motion for summary judgment, and Plaintiff has filed an opposition to the motion.  For the following reasons, the Court will deny Defendant's motion without prejudice.

**I.  BACKGROUND**

It appears that in May 2003, Plaintiff was arrested in Miami for smuggling heroin that he had concealed inside his body.  *See* Decl. of Dorothy Pullo Ex. 2.[1]  This arrest eventually led to a conviction in the United States District Court for the Southern District of Florida.  *See* Aff. of Pl. at p. 1.  In late 2004 or early 2005, Plaintiff sent a FOIA request to the Department of

---

[1] The record evidence relating to Plaintiff's arrest and conviction are sparse.  The Court has pieced them together from the various documents filed by the parties with only limited success.

Justice, although there appears to be no copy of this request in the record.  In January 2005, DOJ sent a letter to Plaintiff responding to his FIOA request and stating that it was forwarding the request to various constituent agencies within DOJ, *viz.* the Drug Enforcement Administration, Executive Office of United States Attorneys (EOUSA), and the Federal Bureau of Investigation. Aff. of Pl. Ex. A.  Shortly thereafter, EOUSA sent a letter to Plaintiff indicating that portions of his FOIA request pertained to documents maintained by DEA and CBP.  Apparently in response to that letter, Plaintiff sent a letter to DEA and CBP on February 22, 2005, which appears to contain the FOIA request that is now the subject of this lawsuit.  Compl. Ex. 1.  Specifically, that letter requests the "Lab Analysis Report prepared by" DEA as well as "any additional records or documents in relation to [Plaintiff's] case[,] [i]ncluding any audio, [v]ideo, or [p]hotographs of [s]urveillance . . . ."  *Id.*[2]

    CBP sent Plaintiff a letter acknowledging Plaintiff's request on March 24, 2005. Pullo Decl. ¶ 2 & Ex. B.  CBP enclosed a "Request for Records" form with the letter and informed Plaintiff that no records could be released until the completed form was received by the agency.  *Id.*  Plaintiff alleges that he subsequently submitted the records request to CBP.  Compl. ¶ 9.  CBP contends that it never received a completed form from Plaintiff and, thus, took no further action on the FOIA request.  Pullo Decl. ¶ 2.

    Plaintiff sent letters to CBP in May and August 2005 inquiring about the status of his records request.  *Id*; Compl. ¶¶ 9-10.  After receiving no response, Plaintiff filed this action

---

[2] Eventually, EOUSA, FBI, and DEA sent letters to Plaintiff indicating that they had located no documents responsive to his FOIA request.  *See* Aff. of Pl. Exs. A & C.  Plaintiff apparently filed intra-agency appeals of those decisions, which were denied.  *See id.* Ex. C.  The instant Complaint does not expressly challenge, nor does the Court construe it to challenge, the FOIA responses by EOUSA, FBI, or DEA.

against CBP on March 24, 2006. Compl. ¶ 11. On June 23, 2006, in response to Plaintiff's lawsuit, CBP conducted a search of its Treasury Enforcement Communications System (TECS), a database that contains "information on the inspection of individuals at the border . . . ." Pullo Decl. ¶ 1. CBP found two pages of documents responsive to Plaintiff's FOIA request. *Id.* ¶ 2. The agency disclosed the documents to Plaintiff in part, redacting certain information pursuant to FOIA Exemptions 2, 6, and 7(C). *Id.*; Supp. Decl. of Dorothy Pullo ¶ 2. CBP then moved for summary judgment on the ground that it has fully complied with its obligations under FOIA. Plaintiff opposes the motion, arguing that the search was inadequate.

## II.  LEGAL STANDARDS

FOIA requires agencies of the federal government to release records to the public upon request unless one of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975). "[D]isclosure, not secrecy, is the dominant purpose of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976); *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Because this case arises under FOIA, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Sweetland v. Walters*, 60 F.3d 852, 855 (D.C. Cir. 1995). And because his request for information under FOIA was denied, at least in part, Plaintiff has standing to sue. *See Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006) ("Anyone whose request for specific information [under FOIA] has been denied has standing to bring an action").

Summary judgment is the routine method for resolving most FOIA actions when there are no material facts genuinely at issue. *See Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313-14 (D.C. Cir. 1988); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.

1981).  The standard is well known: under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson*, 477 U.S. at 248.  A "genuine issue" is one whose resolution could establish an element of a claim or defense and therefore affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.  Thus, "[a] party opposing a motion for summary judgment must point to more than just 'a scintilla of evidence' supporting his position; 'there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50.

        To prevail on a motion for summary judgment in a FOIA case, the responding agency must demonstrate (1) that it conducted an adequate search of its records for the requested information; and (2) that any responsive information that it withheld falls within one of FOIA's exemptions.  *See Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("an agency is entitled to summary judgment if each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection

requirements.") (internal quotations omitted).  A district court conducts a *de novo* review of an agency's determination to withhold information under FOIA.  *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a (g)(3)(A).  It is the agency opposing disclosure of the information under FOIA that bears the burden of establishing that a claimed exemption applies.  *See, e.g.*, *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003).  "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984) (internal quotations omitted).

### III.  ANALYSIS

To obtain summary judgment on the issue of the adequacy of its search, CBP must show that, "viewing the facts in the light most favorable to the requester, . . . [it] 'has conducted a search reasonably calculated to uncover all relevant documents.'"  *Steinberg v. U. S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  To meet its burden, CBP may submit affidavits or declarations that explain in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA.  *Id.* at 127.  CBP must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  In

determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. *Id.* It is Plaintiff's burden in challenging the adequacy of an agency's search to present evidence rebutting CBP's initial showing of a good faith search. *Weisberg*, 705 F.2d at 1351-52. The Court's inquiry regarding the adequacy of the search focuses on the search itself, not its results. *Weisberg*, 745 F.2d at 1485.

Here, Plaintiff requested a "Lab Analysis Report" and "any additional records or documents" related to his criminal case in the Southern District of Florida. Compl. Ex. 1. The affidavit submitted by CBP contends that any relevant records would be found in TECS. Pullo Decl. ¶¶ 1, 3. According to Ms. Pullo, CBP searched the TECS database to find records responsive to Plaintiff's request. *Id.* ¶ 3. The search revealed two records, which were provided to Plaintiff with some redactions. *Id.* Plaintiff has not offered any contrary evidence or shown that the search was not undertaken in good faith. Instead, he argues that the records he received are not the records he requested and that CBP's search was not reasonable. Pl.'s Opp. at p. 3.

Generally, an agency's failure to find a particular document does not undermine the determination that the search was adequate. *Nation Magazine v. U. S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). And mere speculation as to the existence of records not located in the agency's search does not undermine the adequacy of the search. *See Weisberg*, 745 F.2d at 1485 (focus of court's inquiry is on reasonableness of search, not whether undisclosed records may exist). But when an agency confines its search to only one filing system, it must provide some explanation why it confined its search in that way. *See, e.g.*, *Ogelsby*, 920 F.2d at 68 (an "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested."); *Campbell v. U. S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir.

1998) (holding that agency's decision to search only one filing system was inadequate after the initial search indicated that a second filing system might contain responsive documents).

Here, CBP searched only one database — TECS — which it describes as a "database of information on the inspection of individuals at the border" and as the "interface to CBP records of CBP officers with persons encountered at the border [sic]." This vague, cursory description alone does not provide sufficient detail for the Court to determine whether TECS was the only CBP filing system likely to contain relevant information. And CBP makes no further attempt at all to explain why TECS is the exclusive source of potentially responsive material; it merely asserts that it is. Without more than a perfunctory description of TECS, and in the absence of any explanation of CBP's search methodology, the Court cannot find that the search was reasonable as a matter of law. *See Perry*, 684 F.2d at 126 ("to ground a grant of summary judgment on the basis of agency protestations of compliance, the supporting affidavits must be relatively detailed and nonconclusory") (internal quotations omitted).

The Court is further hamstrung in assessing the adequacy of CBP's search at this point because there is virtually no evidence in the record regarding the background of Plaintiff's criminal case in the Southern District of Florida. It appears that CBP was the agency that originally arrested Plaintiff, see Pullo Decl. Ex. 2, but there is no evidence regarding CBP's subsequent involvement in Plaintiff's prosecution. The paucity of information makes it difficult for this Court to accept CBP's assertion, which at this point is simply conclusory, that TECS is the only database that might contain records relating to Plaintiff's criminal prosecution in the Southern District of Florida. *See Perry*, 684 F.2d at 126 ("[the agency's] supporting affidavits must be relatively detailed and nonconclusory") (internal quotations omitted).

The Court does not mean to suggest that CBP is required to search all its records in response to Plaintiff's FOIA request. That clearly is not the law. *See Campbell*, 164 F.3d at 28. "However, an agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested. An agency has discretion to conduct a standard search in response to a general request, but it must" tailor the scope of its search based on the information known to it at the time. *Id.* Here, there is nothing in Ms. Pullo's affidavit about what CBP knew with respect to the investigation, arrest, and prosecution that led to Plaintiff's conviction in the Southern District of Florida, nor is there any attempt to explain CBP's search methodology. As a result, there is nothing in the record from which the Court could conclude that CBP's decision to search only the TECS database was reasonable. At this point, on this record, there is substantial doubt as to the sufficiency of CBP's search. Accordingly, CBP is not entitled to summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that CBP's motion for summary judgment is **DENIED WITHOUT PREJUDICE.**

**SO ORDERED.**

/s/
ROSEMARY M. COLLYER
United States District Judge

DATE:  February 23, 2007