# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**Shanell James,**                      )
                                        )
        **Plaintiff,**                  )
                                        )
                                        ) **Civil Action No. 06-0562 (RMC)**
                                        )
        **v.**                          )
                                        )
**U.S. Customs and Border Protection,** )
                                        )
        **Defendant.**                  )
_____)

## DEFENDANT U.S. CUSTOMS AND BORDER PROTECTION'S RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant, U.S. Customs and Border Protection ("CBP"), pursuant to Fed. R. Civ. P. 56, moves for summary judgment because there are no material facts in dispute in this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended, and defendant is entitled to judgment as a matter of law. In support of this motion, defendant respectfully refers the Court to the attached Memorandum of Points and Authorities. Also attached is defendant's statement of material facts as to which there are no genuine issue.

Plaintiff should take notice that any factual assertions contained in the accompanying affidavit and other attachments in support of defendant's motion may be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in defendant's attachments. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), Local Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of

all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully Submitted,

/s/

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/

_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Shanell James, | ) |
|  | ) |
|       Plaintiff, | ) |
|  | ) Civil Action No. 06-0562 (RMC) |
|  | ) |
|       v. | ) |
|  | ) |
| U.S. Customs and Border Protection, | ) |
|  | ) |
|       Defendant. | ) |

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 7(h), the defendant hereby submits the following material facts as to which there is no genuine dispute:

1. On February 22, 2005, Plaintiff claims that he sent a Freedom Of Information Act (FOIA) request directly to CBP Headquarters. See Plaintiff's Complaint ¶ 6, Exhibit 1. In that February correspondence, Plaintiff requested a Lab Analysis report as well as any additional records or documents prepared by CBP in reference to his criminal case. Id. Plaintiff was stopped and searched by CBP at Miami International Airport on May 25, 2003. Declaration of Dorothy Pullo ¶ 5, 6. Plaintiff was arrested by Immigration and Customs Enforcement (ICE) on the same day. See Plaintiff's Complaint, Exhibit 1; and Pullo Declaration ¶ 5, 6. ICE is another, separate component of the Department of Homeland Security (DHS). Pullo Decl. ¶ 5.

2. On March 24, 2005, the US Customs and Border Protection (CBP) acknowledged the receipt of Plaintiff's FOIA request and requested that he submit the enclosed Request for Records form, which would provide CBP with information as to his current address, date of

birth, as well as affirm his understanding that seeking or obtaining access to records about
another person under false pretenses was punishable by a fine of up to $5,000. Plaintiff's
Complaint, Exhibit 3.

3. CBP has no record that plaintiff ever returned the Request for Records form and no
further action was taken. September 7, 2006, Declaration of Dorothy Pullo, ¶ 2, attached to
CBP's original Motion for Summary Judgment.

4. On or about June 23, 2006, in response to Plaintiff's complaint, a search was
conducted by the FOIA/Customer Satisfaction Unit and two responsive records were found.
Declaration of Dorothy Pullo, ¶ 7.

5. CBP disclosed these two responsive records to Plaintiff in part, redacting certain
information pursuant to FOIA Exemptions 2, 6 and 7 (C). Id.

6. On September 8, 2007, CBP filed its first Motion for Summary judgment and
thereafter, the Court issued its Memorandum Opinion and Order on February 23, 2007 denying
the Motion without prejudice. Id.

7. In response to the Court's Memorandum Opinion and Order issued on February 23,
2007, the two pages of documents were re-examined and a notation was discovered within these
documents, regarding a seizure. As a result, CBP's Miami Field office was contacted to
determine whether a Seizure Report or any additional law enforcement records or information
existed and could be located with respect to the Plaintiff's case. Id., at ¶ 8.

8. In response to that request, fifty-five (55) documents relating to narcotics and personal
items recovered and seized from the Plaintiff at the Miami International Airport, were found.
These documents have been released with the appropriate redactions to the Plaintiff on or about

2

July 11, 2007.  <u>Id.</u>, at ¶ 9, 12.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
_____
RUDOLPH  CONTRERAS, D.C. Bar #  434122
Assistant United States Attorney

/s/
_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Shanell James,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No. 06-0562 (RMC) |
| | ) |
| **v.** | ) |
| | ) |
| **U.S. Customs and Border Protection,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**<u>INTRODUCTION</u>**

This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and

pertains to the processing of Plaintiff's FOIA request regarding case records by U.S. Customs

and Border Protection (CBP), formerly known as the U.S. Customs Service.  On June 23, 2006,

in response to Plaintiff's lawsuit, CBP conducted a search of the Treasury Enforcement

Communications System (TECS) for any and all records concerning the Plaintiff.  Pullo Decl. ¶

6, 7.  At that time, CBP found two (2) pages of documents that were responsive to Plaintiff's

FOIA request for documents pertaining to his criminal case.  Those pages were disclosed to the

Plaintiff in part, redacting certain information in accordance with FOIA Exemptions 2, 6 and

7(C).[1]  Thereafter, CBP filed a Motion for Summary Judgment on September 8, 2006, arguing

that it had made an adequate search under the FOIA and released the appropriate material.  The

Court issued its Memorandum Opinion and Order on February 23, 2007, denying the Motion

---

[1] These redacted pages were attached to CBP's initial Motion for Summary Judgment as
Exhibits E and F.

without prejudice and calling into doubt the sufficiency of CBP's search.  See Memo. Op., p. 8.

In response to the Court's Memorandum Opinion, the released documents were re-examined and a notation discovered, which pointed to possible seizure records in the Miami Field Office, in Miami, Florida.  See the attached supplementary declaration of Dorothy Pullo, former Supervisory Program Analyst, Treasury Enforcement Communications System (TECS) and FOIA/Customer Satisfaction Unit, Office of Field Operations at CBP, ¶ 8.  As a result, fifty-five documents, which comprise law enforcement records were sent from the Miami Field office to headquarters regarding the Plaintiff's secondary inspection at the Miami International Airport.[2]  Plaintiff was suspected of carrying contraband internally.  As a result, plaintiff was questioned, searched at the Miami International Airport by CBP and his luggage seized.  The fifty-five partially released documents relate to CBP's secondary inspection at the Miami International Airport.  CBP has no other records.  Pullo Decl. ¶ 9.

## ARGUMENT

### I.    Defendants Are Entitled to Summary Judgment

#### A.    Standard for Summary Judgment

In a FOIA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(c); Weisberg v. Department of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). The Court exercises de

---

[2]  A "secondary inspection" is a border examination that goes beyond initial questioning. It is conducted in a separate area from the place of initial CBP processing, and can include: a more detailed examination of required travel and entry documents; a search of a vehicle; a search of the person; and/or the examination of baggage.

novo review over FOIA matters, and the burden is on the agency to justify all non-disclosures. 5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 755 (1989). In carrying its burden, agencies may rely on declarations of government officials, to which courts normally accord a presumption of expertise in FOIA as long as the declarations are sufficiently clear and detailed and submitted in good faith. Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see Hayden v. National Security Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Once the Court determines that the declarations are sufficient, it need not inquire further. Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (In FOIA cases, an agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements'.") (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)); see also, Burnes v. CIA, No. 05-242 , U.S. Dist LEXIS 20114 at *2-7 (D.D.C. Sept. 14, 2005) (a copy of the opinion is attached hereto). A court "may award summary judgment [in a FOIA case] solely on the basis of information provided by the department or agency affidavits or declarations." Burns v. CIA, 2005 U.S. Dist LEXIS 20114; see also, Hayden, 608 F.2d at 1386-87.

Summary judgment may be granted solely on the basis of agency affidavits [or declarations] if they "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish that the documents are within the FOIA exemption category; the district court need look no further." Citizens Commission on Human Rights v. FDA, 45 F.3d at 1329; Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991). See also Hayden, supra, at 1387; Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). These declarations or affidavits

3

(singly or collectively) are often referred to as a <u>Vaughn</u> index, after the case of <u>Vaughn v.</u>
<u>Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977, 94 S.Ct. 1564 (1974). There
is no set formula for a <u>Vaughn</u> index. It is the content, not the form which is important. "The
materials provided by the agency may take any form so long as they give the reviewing court a
reasonable basis to evaluate the claim of privilege." <u>Delaney, Midgail & Young, Chartered v.</u>
<u>IRS</u>, 826 F.2d 124, 128 (D.C. Cir. 1987). <u>See also</u> <u>Keys v. United States Department of Justice</u>,
830 F.2d 337, 349 (D.C. Cir. 1987); <u>Hinton v. Department of Justice</u>, 844 F.2d 126, 129 (3d Cir.
1988).[3]

Regarding the adequacy of the search, to satisfy the requirements for summary judgment,
all the agency need do is produce "an affidavit reciting facts which enable the District Court to
satisfy itself that all appropriate files have been searched." <u>Church of Scientology v. IRS,</u> 792
F.2d 146, 151 (D.C. Cir. 1986). "[I]n the absence of countervailing evidence or apparent
inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the
search conducted by the agency will suffice to demonstrate compliance with the obligations
imposed by FOIA." <u>Perry v. Block,</u> 684 F.2d 121, 127 (D.C. Cir. 1982).

In the instant case, the CBP re-examined the documents that it initially disclosed to the
Plaintiff. Upon re-examination, a notation was discovered on one of the documents that there
was a seizure pertaining to the Plaintiff in Miami, Florida. Pullo Decl. ¶ 8. As a result, CBP's

---

[3]    "All that is required, and that is the least that is required, is that the requester and the
trial judge be able to derive from the index a clear explanation of why each document or portion of
a document withheld is putatively exempt from disclosure." <u>Id</u>. "The degree of specificity of
itemization, justification, and correlation required in a particular case will, however, depend on the
nature of the document at issue and the particular exemption asserted." <u>Information Acquisition</u>
<u>Corp. v. Dept. of Justice</u>, 444 F.Supp. 458, 462 (D.D.C. 1978).

Miami Field Office was contacted to determine whether a seizure report or any additional

records or information existed and could be located.  Id.  In response to that contact, CBP

received fifty-five (55) law enforcement records relating to narcotics and personal items

recovered and seized from the Plaintiff at the time of his secondary inspection at the Miami

International Airport.  These documents have been released, in redacted form, to the plaintiff.

Id., at ¶ 9.  Plaintiff's original request to CBP included a request for the "Lab Analysis Report,"

which he indicates was prepared by CBP.  Id., at ¶ 10.  However, CBP does not prepare such

reports, and, as a matter of course, would not receive copies of such records.  Id.

Plaintiff concedes in his complaint that ICE was the arresting agency.  ICE is a separate

component of DHS.  Id., at ¶ 5.  In addition, CBP forwarded Plaintiff's FOIA request to ICE on

July 27, 2005, for review and a determination on the release of any documents and/or

information to the plaintiff.  Id., at ¶ 11.  As the arresting agency, ICE may have received lab

analysis reports and other records relating to the narcotics that were seized from the Plaintiff.[4]

Id.  CBP claimed the following FOIA Exemptions to redact information in the fifty-five (55)

documents: 5 U.S.C. §§ 552 (b)(2); (b)(6); (b)(7)(C); and (b)(7)(E).


### C.    CBP IS JUSTIFIED IN ITS INVOCATION OF EXEMPTION (b)(2) Internal Personnel Rules and Practices.

### Legal Standard for Exemption 2

---

[4]  Customs and Border Protection (CBP) is a component agency of the Department of Homeland Security (DHS).  A component Agency, such as CBP, is only required to respond to a FOIA requester with records within its possession.  See 6 C.F.R. § 5.4(a).  Plaintiff directed his request to CBP, see 6 C.F.R. § 5.3(a), and has now received all of the documents in CBP's possession.

Title 5, United States Code, Section 552 (b)(2) (hereinafter Exemption 2) exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. Department of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); National Treasury Employees Union v. United States Custom Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). See also Gordon v. FBI, 388 F.Supp.2d 1028 (N.D. Cal. 2005) ("high 2"; protecting "no fly lists"; "[r]equiring the government to reveal whether a particular person is on the watch lists would enable criminal organizations to circumvent the purpose of the watch list by determining in advance which of the members may be questioned."); Odle v. Dep't of Justice, No. 05-2771, 2006 WL 1344813 (N.D. Cal. May 17, 2006) ("low 2"; protecting telephone numbers, fax numbers, case file numbers, location codes, allegation codes, and computer path names, because they are routine matters of "merely internal interest."). This Exemption protects routine internal administrative matters and functions of CBP which have no effect on the public at large. It also protects against the risk of disclosure that would benefit those attempting to violate the law and avoid detection or circumvent a legal requirement.

### Application of Exemption 2

The invocation of Exemption (2) in this instance was made to protect telephone, facsimile numbers, administrative markings (e.g., file numbers, log numbers, record

6

identification numbers, etc.) relating to internal agency file control systems, administrative codes and computer codes (e.g., codes and abbreviations referencing identity of CBP offices, and function codes) of internal agency information systems. These markings are purely internal and are utilized by CBP to assist in the management and control of its mission. Pullo Decl. ¶ 14. As access to the filing and computer systems is restricted from the public, the public has little or no interest in this information or the file markings and computer codes. In addition, knowledge of internal agency computer system codes could facilitate improper access to sensitive CBP records and interfere with CBP's ability to maintain control of its information systems. Id.

Exemption 2 was also asserted to withhold such things as the administrative procedures related to the handling of inadmissible aliens (e.g., incident numbers, investigatory record numbers, etc.), the names of units that are activated in response to certain types of incidents, the consultation process within CBP (e.g., internal notification procedures, internal consultation procedures, etc.), the notification or consultation process with other law enforcement agencies, and the procedures related to how information was handled in an operational context by CBP officers. Disclosure of this information to the public would reveal procedures, guidelines, and techniques utilized by the agency in its enforcement operations, thereby benefitting those attempting to violate the law and avoid detection. Public awareness of specific operational information would aid those who seek to circumvent CBP operations and thus harm the agency's effective conduct of its mission. Id., at ¶ 16, 17.

D.    CBP IS JUSTIFIED IN ITS INVOCATION OF EXEMPTION (b)(6)
        and (b)7(C)

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997), citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987), citing Pratt, 673 F.2d at 418. A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "based on information sufficient to support at least 'a colorable claim' of its rationality." Keys, 830 F.2d at 340, quoting Pratt, 673 F.2d at 421.

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-780 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' Department of Air Force v. Rose, [425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested." Reporter's Committee, 489 U.S. at 772 (internal quotation marks omitted). Information that does not

8

directly reveal the operations or activities of the government "falls outside the ambit of the

public interest that the FOIA was enacted to serve." Id. at 775.  That public interest is to "shed[]

light on an agency's performance of its statutory duties." Id. at 772.  The Plaintiff bears the

burden of establishing that the "public interest in disclosure is both significant and compelling in

order to overcome legitimate privacy interests." Perrone v. FBI, 908 F. Supp. 24, 26 (D.D.C.

1995), citing Senate of Puerto Rico v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir.

1987).

Significantly, it is the "interest of the general public and not that of the private litigant"

that matters. Brown v. FBI, 658 F.2d 71, 75 (2d Cir.1981).  "[T]he only public interest relevant

for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about

what their government is up to." Davis v. Department of Justice, 968 F.2d 1276, 1282 (D.C.

Cir.1992) (quoting Reporters Committee, 489 U.S. at 773) (internal quotation marks omitted).

The privacy interests of third parties mentioned in law enforcement files are

"substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less

substantial, it is insubstantial." SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C.

Cir.1991).  Our court of appeals has held "categorically" that "unless access to names and

addresses of private individuals appearing in files within the ambit of Exemption 7(C) is

necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal

activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects, witnesses

or investigators who are identified in agency records in connection with law enforcement

investigations. Reporters Committee, 489 U.S. at 780; Computer Professionals for Social

9

Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity'" (quoting Dunkelberger v. Dept. of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990)).  Indeed, an agency may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity.  Reporters Committee, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, 926 F.2d at 1206.

Exemption 6 of the FOIA provides for the withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In a definitive opinion on the meaning of the term "similar files," the Supreme Court held that Exemption 6 "'[was] intended to cover detailed government records on an individual which can be identified as applying to that individual.'"  Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428); New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990 (en banc).

In Department of State v. Washington Post Co., the Supreme Court held:

'[T]he protection of an individual's right of privacy' which Congress sought to achieve by preventing 'the disclosure of [information] which might harm the individual,' H.R. Rep. No. 1497, supra, at 11, surely was not intended to turn upon the label of the file which contains the damaging information.

Id., 456 U.S. at 601.  Thus, even information which is not specifically located in "personnel files" comes within the ambit of Exemption 6.  Indeed, the Supreme Court clarified that all information that "applies to a particular individual" meets the threshold requirement for

10

Exemption 6. Id. at 599-603, 601. This broad construction of "similar files" was necessary in view of Congress' primary purpose in enacting Exemption 6, which was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Washington Post Co., 456 U.S. at 599.

In this case, CBP withheld, under both Exemption 6 and Exemption 7(C), the names and other personal identifying information of CBP officers and third parties who were mentioned in the documents released. Pullo Decl., ¶ 20. As the information in question can "be identified as applying to [a particular] individual," Washington Post Co., 456 U.S. at 602, the information is contained in files which clearly satisfy the threshold requirement of Exemption 6 as defined by the Supreme Court.

Having established that the withheld information meets the threshold requirement of Exemption 6, a determination must then be made as to whether disclosure would constitute a "clearly unwarranted invasion of personal privacy."[5] This requires a balancing of the public interest in disclosure against the individual privacy interest which would be invaded by release of the information. See, e.g., NARA v. Favish, 124 S. Ct. 1570, 1580 (2004); Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989) [Reporters Committee]; Department of the Air Force v. Rose, 425 U.S. 352, 372 (1976).

Here there can be no question that viable privacy interests are at stake. The identities of law enforcement personnel and third parties are referenced in these two documents, which are

---

[5]  As indicated above, Exemption 7(C) provides broader protection than Exemption 6 because Exemption 7(C) permits information to be withheld whenever disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Thus, records compiled for law enforcement purposes that satisfy Exemption 6 may be withheld under Exemption 7(C) a fortiori.

11

compiled for law enforcement purposes.  Pullo Decl. ¶ 18.  Law enforcement personnel have an

interest in being protected from harassment and annoyance in their private lives due to the

conduct of their official duties, which could result from public disclosure of their identity.  Id.

This is also true with respect to the third parties named, who have a privacy interest in being

protected from comment, speculation and stigmatizing connotation associated with being

identified in a law enforcement record.  Id.

There is no public interest in the release of this privacy-protected information because

dissemination of the information would not help explain the activities and operations of CBP.  No

public interest would counterbalance the law enforcement and third party individuals' privacy

rights in the information withheld under either of these exemptions.  Declaration of Dorothy

Pullo ¶ 18, 19.

### E.    Defendant Properly Invoked FOIA Exemption (b)(7)(E)

Exemption 7(E) of the FOIA provides protection for all information compiled for law

enforcement purposes when release "would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

"[T]he term 'law enforcement purpose is not limited to criminal investigations but can

also include civil investigations and proceedings in its scope."  Mittleman v. Office of Personnel

Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing

Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)).  When, however, a criminal law

enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by

other agencies." <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing <u>Pratt v. Webster</u>, 673 F.2d 408, 418 (D.C. Cir. 1982)).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'"  <u>Keys</u>, 830 F.2d at 340 (quoting <u>Pratt</u>, 673 F.2d at 421).

The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions.  <u>Smith v. Bureau of Alcohol, Tobacco and Firearms</u>, 977 F.Supp. 496, 501 (D.D.C. 1997) (citing <u>Fisher v. United States Dep't of Justice</u>, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)).  While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness.  <u>See</u>, <u>e.g.</u>, <u>Coleman v. FBI</u>, 13 F.Supp. 2d. 75, 83 (D.D.C. 1998) (applying 7(E) to behavioral science analysis and details of polygraph examination); <u>Perrone v. FBI</u>, 908 F.Supp. 24, 28 (D.D.C. 1995) (applying 7(E) to type of polygraph test, type of machine used, polygraph questions and sequence).   In justifying the application of Exemption 7(E) the agency may describe the general nature of the technique while withholding the full details.  <u>See</u> <u>e.g.</u> <u>Bowen v. FDA</u>, 925 F.2d 1225, 1228 (9th Cir. 1991).  The agency is not, however, required to describe secret law enforcement techniques, even in general terms, if the description would disclose the very information sought to be withheld.  <u>Coleman</u>, 13 F.Supp. 2d at 83; <u>Smith</u>, 977 F.Supp. at 501.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk

circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, this clause of the Exemption

protects any "law enforcement guideline" that pertains to the prosecution or investigative stage

of a law enforcement matter whenever its disclosure "could reasonably be expected to risk

circumvention of the law." See, e.g., PHE, Inc. v. United States Dep't of Justice, 983 F.2d 248,

251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available

to its agents might encourage violators to tamper with those sources of information and thus

inhibit investigative efforts"); Jimenez v. FBI, 938 F.Supp. 21, 30 (D.D.C. 1996) (applying 7(E)

to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang

member).

    In the instant case, Exemption 7(E) has been applied to information concerning law

enforcement investigative techniques and procedures that are revealed within the released

documents. Pullo Decl. ¶ 23. Specifically, the type of information redacted applies to the type

of search conducted on the plaintiff during his secondary inspection at the Miami International

Airport. Id. If this information is released, it could assist in subverting the effectiveness of a

particular investigative technique with its corresponding accomplishment in the investigation,

and consequently, could enable smugglers of contraband to employ countermeasures to

neutralize those techniques which to this point have been effective. Id., at 22. Accordingly, the

CBP properly applied Exemption (7)(E) in withholding this information.

### F.    SEGREGABILITY

    The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue sua

sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022,

14

1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

In this case, CBP has demonstrated with reasonable specificity that all reasonably segregable information has been released. The declaration of Dorothy Pullo describes the non-segregable information and the reasons why in some instances partial releases were made. See Pullo Decl. ¶¶ 13 - 23. CBP has plainly met its burden here.

## CONCLUSION

For the foregoing reasons, defendant U.S. Customs and Border Protection respectfully request that its motion for summary judgment be granted.

Respectfully submitted,

15

/s/

_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/

_____

RUDOLPH  CONTRERAS, D.C. Bar #  434122
Assistant United States Attorney


/s/

_____

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
 (202) 305-1334

16