## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHANELL JAMES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 06-562 (RMC)** |
| **v.** ) | |
| ) | |
| **UNITED STATES CUSTOMS AND** ) | |
| **BORDER PROTECTION,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Before the Court are Defendant's Renewed Motion for Summary Judgment, Plaintiff's Motion for a Writ of Mandamus, and Plaintiff's Motion for Leave to File an Amended Complaint. *See* Dkt. ## 53, 56, and 65. Shanell James, proceeding *pro se*, filed this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, appealing the disposition of his records request by the United States Customs and Border Protection ("CBP"), a component agency of the United States Department of Homeland Security ("DHS"). On February 23, 2007, this Court denied Defendant's earlier Motion for Summary Judgment without prejudice, concluding that the record was insufficient to find that CBP's search for documents was adequate. *See* Dkt. # 36. Since then, CBP has undertaken another search for responsive documents, and produced additional documents to Mr. James. For the reasons that follow, the Court will grant Defendant's Renewed Motion for Summary Judgment, deny Plaintiff's Motion for a Writ of Mandamus, and deny Plaintiff's Motion for Leave to File an Amended Complaint.

1

# I. BACKGROUND

Mr. James was arrested in Miami, Florida in May 2003 for smuggling heroin concealed inside his body. This arrest ultimately led to his conviction in the United States District Court for the Southern District of Florida. Mr. James is currently incarcerated at the Metropolitan Detention Center in Brooklyn, New York.

On March 24, 2005, the CBP acknowledged the receipt of a FOIA request sent by Mr. James, requesting a "Lab Analysis Report" and "any additional records or documents" related to his criminal case in the Southern District of Florida. On June 23, 2006, CBP conducted a search of the Treasury Enforcement Communications System (TECS) – a database that contains information regarding inspections of individuals at the border – and two responsive documents were found. Def.'s Mem. in Supp. of Renewed Mot. for Summ. J. ("Def.'s Mem."), Ex. 1 (Declaration of Dorothy Pullo ("Pullo Decl.") ¶¶ 6, 7). CBP disclosed these two responsive records to Mr. James in part, redacting certain information pursuant to FOIA Exemptions 2, 6, 7(C), and 7(E). *Id*. ¶ 7.

CBP thereafter filed its first Motion for Summary Judgment on September 8, 2007, arguing that it had made an adequate search under FOIA and released to Mr. James the appropriate materials. *See* Dkt. # 19. That Motion was denied on February 23, 2007. *See* Dkt. # 36 ("At this point, on this record, there is substantial doubt as to the sufficiency of CBP's search."). In that decision, the Court was concerned that CBP had not detailed what it knew with respect to the investigation, arrest, and prosecution that led to Mr. James' conviction in the Southern District of Florida, nor had there been any attempt to explain CBP's search methodology. *Id*. The Court emphasized that CBP is not required to search all of its records in response to Plaintiff's FOIA request. However, an agency must "tailor the scope of its search based on the information known

2

to it at the time." *Id.* (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998)).

In response to the Court's decision, "the two pages of documents [initially produced] were re-examined by CBP and a notation was discovered within these documents, regarding a seizure. As a result, CBP's Miami Field office was contacted to determine whether a Seizure Report or any additional law enforcement records or information existed and could be located with respect to Plaintiff's case." Def.'s Statement of Facts ¶ 7; Pullo Decl. ¶ 8. In all, 55 documents relating to narcotics and personal items recovered and seized from Mr. James at the Miami International Airport were released to Mr. James with certain redactions. Pullo Decl. ¶¶ 8-9, 12. CBP states that it has released all the information it has in its possession that is responsive to Mr. James' FOIA request. *Id*. ¶ 9.

CBP has once again moved for summary judgment on the ground that it has fulfilled its obligations under FOIA. Mr. James opposes the Motion, arguing that the search was inadequate and that the grounds for withholding documents are inadequate. The Court concludes that CBP has fully complied with Mr. James' FOIA request and therefore will grant Defendant's Renewed Motion for Summary Judgment.

## II.  LEGAL STANDARDS

To prevail on a motion for summary judgment in a FOIA case, the responding agency must demonstrate (1) that it conducted an adequate search of its records for the requested information; and (2) that any responsive information that it withheld falls within one of FOIA's exemptions. *See Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("[A]n agency is entitled to summary judgment if . . . each document that falls within the class

requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.") (internal quotations omitted). A district court conducts a *de novo* review of an agency's determination to withhold information under FOIA. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(g)(3)(a). It is the agency opposing disclosure of documents under FOIA that bears the burden of establishing that a claimed exemption applies. *See, e.g.*, *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57-58 (D.C. Cir. 2003). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984) (internal quotations omitted).

### III. ANALYSIS

**A.    CBP's Renewed Motion for Summary Judgment**

1.    CBP's Search for Responsive Documents

To obtain summary judgment on the issue of the adequacy of its search, CBP must show that, "viewing the facts in the light most favorable to the requester, . . . [it] has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). In order to satisfy this requirement, an agency may produce "an affidavit reciting facts which enable the District Court to satisfy itself that all appropriate files have been searched." *Church of Scientology v. IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986). "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to

4

demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d 121,

127 (D.C. Cir. 1982).  CBP must show that it made a "good faith effort to conduct a search for the

requested records, using methods which can be reasonably expected to produce the information

requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  In determining the

adequacy of a FOIA search, the Court is guided by principles of reasonableness.  *Id*.  It is Plaintiff's

burden to present evidence rebutting CBP's initial showing of a good faith search. *Weisberg v. Dep't*

*of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983).  The Court's inquiry regarding the adequacy

of the search focuses on the search itself, not its results.  *Weisberg*, 745 F.2d at 1485.

   Here, Mr. James requested a "Lab Analysis Report" and "any additional records or

documents" related to his criminal case in the Southern District of Florida.  Compl., Ex. 1.  CBP's

search uncovered documents that were provided to Mr. James with certain redactions and

exemptions.  Those documents related to narcotics and personal items recovered and seized from

Mr. James at the Miami International Airport.  Def.'s Mem. at 5; Pullo Decl. ¶ 9.  Mr. James argues

that the document search was inadequate because "Plaintiff specifically requested the 'Lab Analysis'

report, and to date, the Defendant[] [has] not provided it[,] [e]ven though [] several released

documents make reference to it[s] existence."  Pl.'s Opp'n to Def.'s Mem. in Supp. of Mot. for

Summ. J. ("Pl.'s Opp'n") at ¶ 21.  Mr. James is particularly focused on receiving this lab report that

he says was "prepared by Special Agent Chinell Medina" because he believes it may exonerate him

of his criminal conviction.  *See* Pl.'s Opp'n at ¶ 1.  However, CBP states that it does not prepare such

reports and, as a matter of course, would not receive copies of such records.  *See* Def.'s Mem. at 5;

Pullo Decl. ¶ 10.[1]

An adequate FOIA search is not determined by the results of the search or by the information ultimately released by the agency. Rather, "the adequacy of a FOIA search is generally determined . . . by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs.*, 844 F. Supp. 770, 777 n.4 (D.D.C. 1993). An agency's search is not unreasonable because it fails to find all relevant material. *Steinberg*, 23 F.3d at 551. Having reviewed CBP's supporting declaration and Mr. James' challenges to the search, the Court concludes that the agency's search was adequate and employed methods reasonably expected to produce the information requested.[2]

> 2.     Exemptions

CBP has withheld certain information pursuant to FOIA Exemptions 2, 6, 7(C), and 7(E). Mr. James generally objects to the invocation of such Exemptions, asserting "that his

---

[1] CBP forwarded Plaintiff's request to U.S. Immigration and Customs Enforcement ("ICE") on July 27, 2005, for a review and determination on the release of any documents and/or information to Mr. James. Pullo Decl. ¶ 5. ICE is a separate component of DHS and was the arresting agency. Compl. at 17.

[2] Moreover, it appears that Mr. James may have the lab report but continues to request a copy because he believes that a more complete version has not been produced or that the report he holds contains "results [that] were alter[ed] [or] fabricated in his [criminal] case." *See* Pl.'s Opp'n ¶ 6, 14; Ex. 1 (Letter from Attorney Kenneth J. Kukec enclosing a copy of "the lab report provided by the prosecution in discovery"). Mr. James states that "[i]f the original results were disclosed Plaintiff wouldn't have been indicted [and] convicted." *See* Pl.'s Opp'n ¶ 14. The Court is doubtful that a different or more complete version of the lab report exists given the Government's obligation to produce any potentially exculpatory evidence to defense counsel for use at a criminal proceeding. *See Brady v. Maryland*, 373 U.S. 83 (1963). However, if such a document does exist, the Court is satisfied by CBP's explanation that it would not be maintained in its possession.

6

constitutional right to documents 'trumps' the various exemptions of the Defendant." Pl.'s Opp'n ¶ 13. The argument is unavailing. To the extent he has a right to request documents, it arises under FOIA. Therefore, the limitations in FOIA also apply. For the following reasons, the Court is satisfied that CBP has adequately set forth the agency's reasons for withholding all or portions of each document at issue.

    a. *Exemption 2*

   Exemption 2 allows agencies to withhold records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statues or agency regulations. *Dep't of Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *Nat'l Treasury Employees Union v. U.S. Custom Serv.*, 802 F.2d 525, 528-30 (D.C. Cir. 1986); *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981).

   Here, CBP invoked Exemption 2 to protect "telephone, facsimile numbers, administrative markings . . . relating to internal file control systems, [and] administrative codes and computer codes . . . of internal agency information systems." Def.'s Mem. at 6-7. Ms. Pullo attests that these "markings are purely internal and are utilized by CBP to assist in the management and control of its mission." Pullo Decl. ¶ 14. Not only does "the public [have] little or no interest in this information," but access to "internal agency computer system codes could facilitate improper access to sensitive CBP records." *Id.*

   The Court concludes that CBP properly withheld this kind of information under

Exemption 2.

        b.     *Exemptions 6 and 7(C)*

CBP relied on both Exemptions 6 and 7(C) to withhold the names and personal identifying information of CBP officers and third parties who were mentioned in the documents released.  Pullo Decl. ¶ 20.

Exemption 6 of FOIA provides for the withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).   The Supreme Court has held that Exemption 6 was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). Information need not be located in "personnel files" to come within the ambit of Exemption 6, *id*. at 601, because Exemption 6 is necessary "to protect individuals from injury and embarrassment that can result from the unnecessary disclosure of personal information." *Id*. at 599.

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  The exemption is not limited to criminal investigations but can also include civil investigations and proceedings. *Mittleman v. Office of Personnel Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996).  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987).  A criminal law enforcement agency must show that "the nexus between the agency's activity . . . and its law enforcement duties is based on information sufficient to support at least a colorable claim of its rationality." *Keys*, 830 F.2d at 340 (internal citations omitted).

Once an agency has demonstrated that records were compiled for law enforcement purposes, a court considers whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This determination necessitates a balancing of an individual's right to privacy against the public's right of access to information in government files. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776-80 (1989). For instance, Exemption 7(C) has been found to protect the identities of suspects, witnesses, or investigators who are identified in agency records in connection with law enforcement investigations. *See Reporters Comm.*, 489 U.S. at 780; *Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996).

Both law enforcement personnel and third parties have an interest in avoiding public disclosure of their identities from law enforcement records. Moreover, there is no public interest in the release of this kind of information because its dissemination "would not help explain the activities and operations of CBP." Def.'s Mem. at 12. The "interest of the general public, and not that of the private litigant" controls the analysis, *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir. 1981), and public interest in disclosure of records "does not include helping an individual obtain information for his personal use." *See Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002).

Release of the names of CBP personnel and others (e.g., witnesses, suspects, detainees, etc.) could embarrass those persons and interfere with CBP's mission. The Court concludes that the CBP's decision to withhold information under Exemptions 6 and 7(C) was proper.

c.      *Exemption 7(E)*

Exemption 7(E) of FOIA provides protection for information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement

investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Here, Exemption 7(E) has been applied to information concerning law enforcement techniques and procedures that are revealed within the released documents. Pullo Decl. ¶ 23. Specifically, the type of information redacted applies to the type of search conducted on Mr. James at the Miami International Airport. CBP argues that "[i]f this information is released, it could assist in subverting the effectiveness of a particular investigative technique . . . and could enable smugglers of contraband to employ measures to neutralize those techniques." Def.'s Mem. at 19; Pullo Decl. ¶ 22.

In justifying the application of Exemption 7(E), the agency may describe the general nature of the technique while withholding the full details. *See, e.g.*, *Bowen v. FDA*, 925 F.2d 1225, 1228 (9th Cir. 1991). The Court concludes that CBP invoked Exemption 7(E) properly.

3.    Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with the exempt portions. 5 U.S.C. § 552(b); *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999). A court errs if it simply "approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)). In order to demonstrate that all reasonably segregable material has been released, the agency must

provide a "detailed justification" rather conclusory statements. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force* 566 F.2d 242, 261 (D.C. Cir. 1977). The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. *Id.*

CBP argues that all reasonably segregable information has been released. *See* Pullo Decl. ¶¶ 13-23 (describing the non-segregable information and the reasons why in some instances partial releases were made).[3] Mr. James disagrees that all reasonably segregable information has been released, but does not provide argument beyond that mere conclusion. *See* Pl.'s Opp'n at ¶ 17. The Court concludes that CBP has adequately stated its justifications for withholding the relevant documents in full.

B.    **Plaintiff's Motion for a Writ of Mandamus**

Before the Court is Plaintiff's Motion for a Writ of Mandamus ("Pl.'s Mot.") [Dkt. # 56], filed on August 29, 2007. Mr. James would like this Court, pursuant to Federal Rule of Civil Procedure 28, to order the Bureau of Prisons to provide him with the "legal materials that he was separated from during his transfer" from the Federal Correctional Institution-McKean in Bradford, Pennsylvania to his current place of incarceration. *See* Pl.'s Mot. at 1-3. Mr. James was transferred to his current facility pursuant to a writ issued by the United States District Court for the Eastern District of New York. *Id.* at 1.

Mr. James asserts that he has also filed an action in the Eastern District of New York for the same relief. *See* Pl.'s Reply in Supp. of Mot. for Writ of Mandamus ("Pl.'s Reply") at 3

_____

[3] *See, e.g.*, ¶ 15 (reference numbers, computer codes and abbreviations that would identify CBP offices, agency codes, and fax numbers were redacted from otherwise released documents); ¶ 17 (information relating to internal procedures of CBP redacted from otherwise released documents); and ¶ 20 (names and identifying information of CBP officers, government personnel, and third parties redacted from otherwise released documents).

("Plaintiff was not sure which of the Honorable Court(s) respectively has the proper authority/jurisdiction to hear his petition for 'Writ of Mandamus,' not knowing which Plaintiff filed in both Honorable Court(s).").

A writ of mandamus is an extraordinary remedy to be utilized only under exceptional circumstances. *Chaplaincy of Full Gospel Churches v. Johnson*, 276 F. Supp. 2d 82, 83 (D.D.C. 2003). District courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is only available to compel an officer of the United States to perform a duty if the petitioner shows that (1) he has a clear right to relief; (2) the respondent has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff. *Swan v. Clinton*, 100 F.3d 973, 977 n.1 (D.C. Cir. 1996) (citations omitted); *Atl. Tele-Network, Inc. v. Inter-Am. Dev. Bank*, 251 F. Supp. 2d 126, 131 (D.D.C. 2003).

The Court is sympathetic that Mr. James, proceeding *pro se*, is without his legal documents. However, the Court is without jurisdiction to hear this request. *See United States v. Huss*, 520 F.2d 598, 604 (2d Cir. 1975) ("a mandamus action may be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved") (internal quotations omitted). Mr. James, who is currently residing outside this jurisdiction, is asking the Court to compel the Federal Bureau of Prisons, a non-party to the instant action, to release his legal papers to him. The only Defendant in this action is the CBP. Because the CBP has no control over Mr. James' legal documents, Mr. James Motion for a Writ of Mandamus must be denied.

C.    **Plaintiff's Motion for Leave to File an Amended Complaint**

On January 28, 2008, Mr. James filed a Motion for Leave to Amend the Complaint ("Pl.'s Mem.") [Dkt. # 65], to add the Drug Enforcement Administration ("DEA") and the U.S. Immigration and Customs Enforcement ("ICE") as Defendants. Once a responsive pleading has been served in a case – as is the case here[4] – the plaintiff may amend the complaint only by leave of the court or by written consent of the adverse party.[5] Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The grant or denial of leave lies in the sound discretion of the district court. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).

Mr. James explains that in November 2004, he submitted a FOIA request to the U.S. Department of Justice, Justice Management Division, seeking the same lab analysis report he requested from CBP. Pl.'s Mem. ¶ 1. The request was referred by the Justice Management Division to the DEA and various other agencies. *Id.* ¶ 2. In February 2005, Mr. James submitted another FOIA request "seeking the same 'Lab Analysis' report, direct[ly] to both DEA, and the ICE." *Id.*

The DEA was not able to locate any records responsive to Mr. James' request. *Id.* ¶ 4. Mr. James filed an administrative appeal of the DEA's determination and the agency's determination was upheld on June 6, 2005. *Id.* ¶ 5-6. At some point, Mr. James filed a second FOIA request to be sent directly to the DEA. In November 2007, the DEA responded to "his second request for the Lab Analysis report" by stating that it was withholding a 1-page document pursuant to Exemptions 6 and (j)(2) of FOIA and the Privacy Act, respectively. Pl.'s Mem. ¶ 9; 5 U.S.C. §552(b)(6); 5 U.S.C. § 552a(j)(2). Mr. James believes that this 1-page document is the Lab Analysis

---

[4] *See* Def.'s Answer to Complaint [Dkt. # 15].

[5] CBP did not respond to Plaintiff's Motion to Amend the Complaint.

report.  Pl.'s Mem. ¶ 9.

ICE released 12 pages of documents to Mr. James in March 2007.  *Id*. ¶ 8.  It is unclear whether ICE released the documents in response to Mr. James' February 2005 request or in response to receiving a referral from CBP.  *See supra* n.1.

Mr. James states that he did not name the DEA and ICE as defendants initially in this case because he incorrectly believed, from a notation on the incomplete copy of the Lab Analysis report he holds, that the CBP was the only agency that would have responsive records.  *Id*. ¶ 3 (The "generated document . . . displayed the referring agency as 'U.S. Customs Service.'  This confused Plaintiff who believed that the U.S. Customs Service was the agency responsible for the request[ed] record (solely).  This was the reason why Plaintiff filed his original complaint without naming DEA and ICE.").  When Mr. James received CBP's Renewed Motion for Summary Judgment, he learned that CBP had referred his request to ICE on July 7, 2005.[6]  *Id*. ¶ 7.

Mr. James argues that CBP acted improperly by not revealing until filing Ms. Pullo's Declaration that ICE, as the arresting agency, may have generated the Lab Analysis report.  Pl.'s Mem. ¶ 12.  However, it is clear to the Court that (1) Mr. James was aware that ICE was the arresting agency in his criminal case; (2) Mr. James has consistently believed the ICE and the DEA may have documents related to his criminal case, including a Lab Analysis Report, or he would not have sent separate FOIA requests to those agencies; and (3) Mr. James has had nearly two years to seek leave

---

[6] In Dorothy Pullo's Declaration, she explains that "ICE was the arresting law enforcement agency in this case and upon my review of the CBP file, I discovered notations that Plaintiff's FOIA request had been previously forwarded by CBP to ICE on July 27, 2005 for review and determination . . . As the arresting agency, ICE may have received lab analysis reports and other records relating to the narcotics seized from the Plaintiff.  In addition, ICE, along with the prosecuting government agency, would likely maintain any additional records that accumulated as the case progressed through the criminal system."  Pullo Decl. ¶ 11.

to amend his Complaint in this case to add ICE and the DEA as defendants and chose not to do so

until receiving CBP's Renewed Motion for Summary Judgment.  At this late stage, when the only

named Defendant will be dismissed from the case, the Court will not allow Mr. James to bring new

claims, based on different FOIA requests, against new defendants.  Mr. James' Motion for Leave to

Amend the Complaint will be denied.  Mr. James is free, however, to file new actions against the

DEA and ICE.

## IV.  CONCLUSION

The Court will grant Defendant's Renewed Motion for Summary Judgment [Dkt. #

53], deny Plaintiff's Motion for a Writ of Mandamus for lack of jurisdiction [Dkt. # 56], and deny

Plaintiff's Motion for Leave to File an Amended Complaint [Dkt. # 65].  All other pending motions

will be dismissed as moot and this case will be closed.  A memorializing order accompanies this

Memorandum Opinion.


Date: March 3, 2008                                      _____/s/_____
                                                        ROSEMARY M. COLLYER
                                                        United States District Judge